IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Criminal No. 06-109 (RWR) |
| ) | |
| **TYRONE LOFTON,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND
STATEMENTS AND INCORPORATED MEMORANDUM OF POINTS AND
AUTHORITIES**

Defendant, Tyrone Lofton, through counsel, respectfully moves the Court for an order suppressing all physical evidence and an alleged statement made by Mr. Lofton that were obtained in violation of the Fourth and Fifth Amendments, as a result of a search of 229 54th Street, N.E., by members of the Capital Area Regional Task Force on April 7, 2005. Such evidence includes, but is not necessarily limited to, the gun and narcotics charged in the indictment, and a statement the Defendant allegedly made while in custody on the day of the search. The grounds for this motion are more fully stated in the accompanying memorandum of law.

**MEMORANDUM OF LAW**

A.  BACKGROUND.

On April 7, 2005, several members of the Capital Area Regional Fugitive Task Force went to 229 54th Street to execute an arrest warrant for Monica Cain. The arrest team arrived at the 54th Street address at approximately 6:45 a.m. and knocked on the front door. Ms. Cain opened the door and identified herself. While some members of the Task Force immediately placed Ms. Cain under arrest, other members of the Task Force pushed their way in to the home. Once inside, members of the Task Force saw the Defendant standing in the livingroom. They immediately ordered the Defendant to stop and the Defendant complied. A member of the Task Force handcuffed the Defendant and instructed him to sit down on a nearby couch.

After handcuffing the Defendant, and without obtaining consent to do so from either the Defendant or Ms. Cain, members of the Task Force proceeded to conduct a thorough search of the home. Inside a safe, found inside a closet in an upstairs bedroom – several feet away from where Ms. Cain had been placed under arrest and the Defendant handcuffed, members of the Task Force found narcotics and a 9 mm. handgun.

After finding the narcotics and handgun, the agents went back down stairs and confronted the Defendant. Without advising the Defendant of his Miranda rights, and while the Defendant was handcuffed, the agents began to interrogate the Defendant. After nearly two hours of interrogation, the Defendant gave a two-and-a-half page written statement to the agents. Several hours later, the agents obtained a search warrant for the premises and found additional narcotics located inside a drawer in an upstairs bedroom.

B.     ARGUMENT

**The Seizure of the Defendant and the Subsequent Recovery of the Firearm, Narcotics, and the Statement Allegedly Made by the Defendant Must be Suppressed as the Fruit of an Illegal Entry and Search of 229 54th Street.**

It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. United States v. Dawkins, 17 F.3d 399, 402 (D.C. Cir. 1994), quoting Payton v. New York, 445 U.S. 573. 586 (1980). "In the clearest terms, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not be reasonably be crossed without a warrant.'" Id. at 403 (citations omitted). See United States v. Socey, 846 F.2d 1439, 1444 (D.C.Cir.); Washington v. United States, 585 A.2d 167 (D.C. Cir. 1991). These strictures apply equally to the seizures of persons as to the seizure of property. Payton, supra at 590.

In the instant case, the arrest team entered 229 54th Street and conducted a search of the premises without search warrant. Because the government has not demonstrated that the search the home falls within a specifically established and well-delineated exception to the warrant requirement, the search of the premises was unconstitutional and the Court must suppress as evidence at trial the narcotics, firearm and statement given by the Defendant. Wong Sun, 371 U.S. at 484-85.


**The Search for the Firearm in the Instant Case Exceeded the Permissible Scope of a "Protective Sweep"**

Even if this Court were to find the arrest team's entry into 229 54th Street, N.E. survives Fourth Amendment scrutiny, the recovery of narcotics and firearm from inside the safe located in

the upstairs closet violated the Defendant's Fourth Amendment rights.

In Maryland v. Buie, 494 U.S. 325 (1990), the Supreme Court held that, incident to an arrest, officers could conduct a warrantless search by looking for other individuals "in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Id. at 334. However, the scope of a so-called "protective sweep" is narrowly circumscribed – officers must limit their search to a cursory check of only those areas where individuals could be hiding. See United States v. Ford, 56 F.3d 265, 270 (D.C. Cir. 1995). Moreover, the cursory search cannot last any longer than necessary to dispel concerns that an individual might be hiding in the searched location. Id.¹

In the present case, officers found the gun and narcotics inside a safe located in an upstairs bedroom – not a location where officers could reasonably believe a person might be hiding.

**"Exigent Circumstances" Did Not Justify the Warrantless Search for and Seizure of the Narcotics and Firearm in the Instant Case**

It is also well-established that officers may conduct a warrantless search of a location if there is probable cause to search and there exist "exigent circumstances" such that waiting to obtain a warrant would risk an imminent threat to the safety of law enforcement officers or the public, see Warden v. Hayden, 387 U.S. 294, 299 (1967). In other words, "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so

---

¹Buie actually distinguishes between two different kinds of "protective sweeps" – one of areas immediately adjacent to the location of arrest, and the other of areas more remote. See Ford, 56 F.3d at 268-69. Officers are automatically allowed the first type of sweep; they must have justification for the second. However, both involve the same cursory check for individuals only of locations capable of hiding individuals. Id. at 269-70.

would gravely endanger their lives or the lives of others." Hayden, 387 U.S. at 299. The exception is a narrow one: the exigencies of a particular situation must be "so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Mincey, 437 U.S. at 393-94.

The exigencies of the instant case did not create "such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." United States v. Wilson, 36 F.3d 205, 209 (1st Cir. 1994). Agents had already arrested Ms. Cain prior to conducting the search for the narcotics and firearm. The Defendant was handcuffed without incident, and the only other adult occupant of the residence, Ms.Cain, was outside in custody with other members of the arrest team. There was no evidence that the Defendant or Ms. Cain were either armed or dangerous.

This Circuit's decision in United States v. Ford, 56 F.2d 265 (D.C. Cir. 1995), is directly on point. There, six officers went to Ford's mother's house to execute a search warrant for appellant at approximately 7:00 a.m. in the morning. The affidavit accompanying the warrant stated that Ford had shot a man after he and several accomplices had robbed the man of cocaine. Id. at 267. Upon entry, one of the officers (Agent Godfrey) saw and immediately arrested Ford after he emerged from a back bedroom. Ford did not resist arrest. Id. At least two additional persons, including Ford's "visibly upset mother and another unknown woman," were in the house and apparently unrestrained (but secured) at the time. Id. at 269 n. 6; see also id. at 271 n.9.

After placing Ford under arrest, Agent Godfrey went into Ford's bedroom to conduct a "protective sweep" to determine whether other occupants were in the house. While in the room,

Agent Godfrey observed a gun magazine clip in plain view. Although he had already determined that no persons were in the room, Agent Godfrey nonetheless conducted a more probing search of the room – he lifted the mattress, revealing ammunition, money, and cocaine. Id. at 267. After hearing that another officer had observed someone attempt to put something on the window sill, Agent Godfrey lifted the window shade and found a firearm. Id. at 267.

The district court denied appellant's motion to suppress, ruling "[i]n conducting a protective sweep, a reasonably prudent police officer who finds ammunition in plain view next to a bed is justified in checking the immediate vicinity in an attempt to locate weapons that might pose a danger to those present." Id. The Court of Appeals disagreed. First, the Court ruled that lifting the mattress and blinds exceeded the scope of a permissible "protective sweep" as contemplated by Maryland v. Buie, 294 U.S. 325 (1990), because a "protective sweep" is limited to the cursory search of only those areas where a person who could launch an attack might be located. Ford, 56 F.3d at 270.

Second, the Court rejected the government's assertion that "exigent circumstances" – namely, the threat to officer safety posed by an unaccompanied gun clip – justified Agent Godfrey's search under the mattress and behind the blinds:

> The crime which gave rise to Ford's arrest warrant occurred months, not minutes, before the police arrived at his mother's apartment, and the seizures occurred after, not prior to or contemporaneous with [appellant's] arrest. . . . [D]elaying the course of the offices' investigation in this case clearly would not have endangered their lives or the lives of others.

Id. at 271 (emphasis in original). Concern over the imminent destruction of evidence was also unavailing, despite the fact that at least two other individuals were present in the house at the

time.  Id. at 271 n.9 ("Exigency due to imminent destruction of evidence in this case was not an issue since the police officers presumably had watch over the occupants.").  Finding the warrantless search unconstitutional, the Court provided the government and law enforcement officers with a blueprint of how officials should proceed when confronted with similar circumstances:

> In presenting this case, the Government assumes that the law enforcement officers here had only two options: either the police search the house until they find the suspected gun or they back out of the apartment with guns poised, attempting to protect themselves against an individual who might use the hidden gun.  This misstates the situation, for the police had reasonable alternatives to these two extremes.  First, the police could have telephoned a magistrate for a search warrant.  See Fed. R. Crim. P. 41(c)(2)(A) ("[A] Federal magistrate judge may issue a warrant based upon sworn testimony communicated by the telephone."). . . . Assuming, arguendo, that the Government is correct in its assertion that the early morning hour of the arrest would have delayed the obtaining of a warrant for several hours, law enforcement officers had another reasonable alternative.  They could have secured the bedroom and telephoned a magistrate for a search warrant, or they could have asked the owner of the apartment, appellant's mother, whether she would consent to a search of the apartment in lieu of waiting for a magistrate to issue a search warrant.  This reasonable alternative to a warrantless search would have avoided the infringement of Fourth Amendment rights, without in any way jeopardizing the safety of the officers.

Id. at 272.

So too in the present case did officers have a reasonable alternative to a warrantless search – officers should have secured the home, watched over the Defendant, and attempted to obtain a telephonic warrant. Or, the officers could have simply asked the Defendant or Ms. Cain for consent to search the home. Like Ford, Ms. Cain had already been detained and was headed to the cellblock  in handcuffs.  The Defendant was sitting inside the home handcuffed and therefore going nowhere.

The circumstances faced by officers in the instant case prior to the search did not create

such dire exigencies that obtaining a warrant or consent from the Defendant would have been unreasonable.

**All Statements made by the Defendant Must be Suppressed Because They Were Made Involuntarily and in Violation of <u>Miranda</u>**

<u>A.</u>     The Defendant's Statements Were Involuntary

The government has alleged that the Defendant made a two-and-a-half page statement to the police on the day of the search. Before introducing that statement at trial, either in its case-in-chief or as impeachment or rebuttal evidence, the government bears the burden of proving that the statement was voluntary. <u>See</u> <u>Lego v. Twomey</u>, 404 U.S. 477 (1972). The test for voluntariness is whether a statement is the "product of an essentially free and unconstrained choice by its maker." <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961). The determination of whether a statement was made voluntarily "requires a careful evaluation of all the circumstances of the interrogation." <u>Mincey v. Arizona</u>, 437 U.S. 385, 402 (1978). The Court must consider the "totality of the circumstances" in deciding whether the defendant made his statement voluntarily. <u>Fikes v. Alabama</u>, 352 U.S. 191 (1957); <u>see</u> <u>also</u> <u>Gallegos v. Colorado</u>, 370 U.S. 49 (1962) (determination of whether an accused's statement was made involuntarily so as to render it inadmissible requires close scrutiny of the facts of each individual case); <u>Clewis v. Texas</u>, 386 U.S. 707 (1967).

Specifically, the Court must examine the efforts to overbear the Defendant's free will in relation to his capacity to resist those efforts. <u>Davis v. North Carolina</u>, 384 U.S. 737 (1966); <u>Culombe</u>, 367 U.S. at 607. The Court must examine the Defendant's "background, experience, and conduct," <u>North Carolina v. Butler</u>, 441 U.S. 369, 375 (1979), to determine whether his

8

statements were the product of a rational intellect and a free will.  Blackburn v. Alabama, 361 U.S. 199, 208 (1980).  Here, the evidence at a hearing will show that any statements made by the Defendant were made involuntarily and thus must be suppressed under the Fifth Amendment.

### B. The Defendant's Statements were Made in Violation of Miranda

Even if the statements were made voluntarily, Miranda requires suppression of the Defendant's statements during the government's case-in-chief because the Defendant was not adequately apprized of his right against self-incrimination prior to undergoing custodial interrogation.  See, e.g., Pennsylvania v. Muniz, 496 U.S. 582, 110 S. Ct. 2638, 2643-44 (1990).  A person is in "custody" under Miranda when he "has been . . . deprived of his freedom of action in any significant way."  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Whether a person is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation."  Berkemer v. McCarty, 468 U.S. 420, 442 (1984).  "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

In the present case, therefore, the facts and circumstances surrounding the arrest and interrogation of the Defendant do not support a finding either (1) that the Defendant was adequately apprized of his Miranda rights, or (2) that any alleged waiver of his Miranda rights was a knowing, voluntary, and intelligent one.  Thus, the statements must be suppressed, as well as any evidence seized as a result of those statements.

9

**CONCLUSION**

For the foregoing reasons, defendant Tyrone Lofton submits that the narcotics, firearm and statement in this case should be suppressed from use at trial because they were obtained in violation of the Fourth and Fifth Amendments.  Mr. Lofton requests an evidentiary hearing on this motion.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____"/s/"_____
David W. Bos
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500