UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 06-109 (RWR) |
| : | |
| : | Status: September 5, 2006 |
| TYRONE LOFTEN, : | |
| : | |
| Defendant. : | |
| _____ : | |

UNITED STATES' OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to Defendant's Motion to Suppress Physical Evidence and Statements and, Incorporated Memorandum of Points and Authorities (Motion to Suppress) filed on July 14, 2006. In support of this opposition, the United States would show the following:

FACTUAL BACKGROUND

1. Defendant was indicted on the charges of Unlawful Possession With the Intent to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii); Unlawful Possession With the Intent to Distribute Cannabis, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c); and Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for Term Exceeding One Year, in violation of 18 U.S.C. § 922(g). The charges all arise out of events that occurred during the execution of an arrest warrant on April 7, 2005.

2. On April 7, 2005, members of the Capital Area Regional Fugitive Task Force[1] went to 229 54th Street, N.E., Washington, D.C, to execute an arrest warrant for Monica Cain. When the marshals knocked on the door, Ms. Cain answered the door. Ms. Cain let the officers in and they explained why they were there. Although not completely undressed, Ms. Cain needed additional clothing in order to go outside. As the marshals began to put Ms. Cain in handcuffs, she indicated that her boyfriend Tyrone was upstairs. The dwelling was a detached townhouse. The stairs leading to the second level were immediately to the right of the location of the spot where the marshal arrested Ms. Cain. At the top of the stairs was a bedroom on the right side. The top of the stair directly overlooked the location where Ms. Cain was arrested.

3. The marshals called and "Tyrone" – who was later identified as Tyrone Loften – came down the stairs. The identity of the defendant was unknown to the police at this point.

4. As the defendant came out of the bedroom at the top pf the stairs, Officer Todd Perkins went up the stairs to perform a protective search of the area to make sure that nobody else was in the house who could interfere with or cause harm to the officers. Officer Perkins went into the bedroom just vacated by the defendant and looked in the closet to ensure that nobody was hiding there. When he looked in the closet, Officer Perkins observed a safe with the door open. Officer Perkins was able to see what he believed to be marijuana in plain view. While recovering the marijuana that was in plain view, the police also recovered approximately 60 grams of cocaine base, 200 grams of marijuana, a scale, United States Currency, rubber gloves, and a Taurus 9mm handgun and magazine.

---

[1] The task force was a multi-agency efforts to apprehended wanted on outstanding warrants.

5. Officer Walter Gilmore then immediately obtained a search warrant for the house. The police were able to obtain a warrant that evening. In the course of executing the search warrant, the police recovered more cocaine base that weighed approximately 150 grams.

6. As the police obtained the search warrant and continued their investigation, Ms. Cain was secured and kept downstairs. The defendant was secured in handcuffs and kept upstairs.

7. Agent T.J. Barmonde of the Bureau of Alcohol, Tabacco and Firearms (ATF) was called to the scene to assist. Although no decision had been made as to whether to arrest the defendant, Agent Barmonde advised the defendant of his constitutional rights and asked the defendant if he was willing to answer any questions. The defendant appeared angry and simply remained silent. Agent Barmonde discontinued his effort to interview the defendant.

8. Approximately one hour later, the police finished executing the search warrant and began to transport Ms. Cain, pursuant to the original arrest warrant, for processing at the station. The police decided not to arrest defendant. The handcuffs were taking off of the defendant.

9. As the officers were leaving the location, the defendant approached Marshal Thomas Obrien and indicated that he now wished to make a statement. Marshal Obrien used his cell phone and called Agent Barmonde, who had already left the scene, and requested that he return and talk with the defendant.

10. When Agent Barmonde returned, the defendant was in the front of the house waiting for him. The defendant was calm and did not appear intoxicated. The defendant was free to come and go as he wished, and he was not surrounded by the police. At one point, the defendant talked to a group of citizens who had arrived on the scene. Agent Barmonde asked if the defendant wish to talk at a different location. The defendant responded by stating that he felt safe talking on the street in

front of the house.

11. Agent Barmonde, while in the presence of another marshal, reminded the defendant that he was not under arrest and was under no obligation to make a statement. Agent Barmonde re-advised the defendant of his constitutional rights. The defendant waived his rights and told Agent Barmonde that the contraband found in the house belonged to the defendant. When asked to reduce his statement to writing, the defendant requested that Agent Barmonde write out the statement because the defendant was comfortable with his writing skills. Agent Barmonde wrote out the statement attached hereto as Exhibit 1, read it to the defendant and then gave it to the defendant to read and sign.

12. The Motion to Suppress contends that the evidence recovered in this case must be suppressed because it was obtained through an illegal search and seizure. The motion goes onto argue that the defendant's statement should be suppressed as well because the defendant did not voluntarily waived his rights. The defendant is wrong in all respects. First, the police were entitled to conduct a protective sweep of the bedroom and closet where the contraband was found. Second, once Officer Perkins observed the marijuana in the open safe, it was inevitable that the police would recover the rest of the contraband because the police then obtained a search warrant for the house. With regard to the defendant's statement, the Court should reject this argument because the defendant was not in custody at the time he gave the statement marked as Exhibit 1. Also, even if he had been in custody, the defendant voluntarily waived his right to remain silent. Therefore, the Motion to Suppress should be denied in its entirety.

# DISCUSSION

### The Motion to Suppress Should Be
### Denied Because the Police
### Were Entitled to Conduct a Protective Sweep

13. The police did not violate the Fourth Amendment when Officer Perkins conducted a protect sweep of the bedroom where the narcotics and firearm were found. In order to ensure the safety of himself and his fellow officers, Officer Perkins was entitled to go into the bedroom, from which the defendant had just emerged, that was located at the top of the stairs and overlooking the area where Ms. Cain was arrested. Likewise, he was authorized to check the closet to ensure that nobody was hiding in the closet. Once observing the contraband that was then in plain view, the police were authorized to seize it. Therefore, the Motion to Suppress should be denied.

14. "Except in specific, well defined circumstances, the search of a home without a search warrant issued on probable cause is not reasonable and thus violates the Fourth Amendment of the Constitution." United States v. Henry, 48 F.3d 1282, 1284 (D.C. Cir. 1995)(protective sweep of apartment authorized under Fourth Amendment even where the defendant is arrested outside front door). "A protective sweep may last 'no longer than is necessary to dispel the reasonable suspicion of danger'". United States v. Thomas, 429 F.3d 282, 287 (D.C. Cir. 2005)(citing Maryland v. Buie, 494 U.S. 325, 334 (1990)). In United States v. Thomas, the appellate held that there are two types of protective sweeps. 429 F.3d at 287. The first sweep may be conducted as a precautionary matter, and without probable cause or reasonable suspicion, and must be limited to area immediately adjoining the place of arrest from which an attack could be launched. Id. The second type authorizes the police to sweep beyond immediately adjoining areas, but must be based on articulable facts that would lead a reasonable prudent officer to believe that the area might harbor an individual posing

a danger to the officers. Id. Officer Perkins' protective sweep was permissible under both types.

15. Fearing for his own safety, as well as the safety of his fellow officers, Officer Perkins was authorized to conduct a protective sweep of those immediate areas from which an attack could be launched. Indeed, the police had been advised by Ms. Cain that someone named "Tyrone" was upstairs. It was unclear whether the defendant, who was unknown to the police at this point time, was the "Tyrone" or if there may have been another person present. Moreover, the bedroom where Officer Perkins was located at the top of the stairs and effectively overlooked where the police had arrested Ms. Cain. From this vantage point, an attacker would have an immediate and distinct advantage over the police. See e.g. United States v. Henry, 48 F.3d at 1285 (police do not have to leave an apartment and risk being targets for a confederate of the arrestee). Thus, this bedroom was the type of adjoining area contemplated by the first type of protective sweep.[2] Therefore, the sweep was permitted under the Fourth Amendment.

16. Likewise, it was reasonable for Officer Perkins to look in the closet of the bedroom because it is exactly the sort of location that from which an attack could be launched to the surprise of the police. See Maryland v. Buie, supra, 494 U.S. at 334 (recognizing the need for police to check closet as a potential hiding place). The reasoning in Buie and Thomas highlights why the defendant's reliance on United States v. Ford, 56 F.3d 265 (D.C. 1995) is misplaced. See Motion to Suppress, p. 4. In United States v. Ford, the court held that authorized protective sweeps did not

---

[2] In the event that the Court does not agree that the bedroom is adjoining the area where Ms. Cain was arrested, this Court should denied the motion on the grounds that the search was authorized by the second type of protective sweep. Specifically, Ms. Cain told the police that her boyfriend "Tyrone" was upstairs. Because it was unclear if the male coming out of the bedroom was Ms. Cain's boyfriend, the police would be justifiably concerned that they were still at risk of attack from Ms. cain's boyfriend since they did not know if there was a second person upstairs and where on the second floor "Tyrone" might be located.

extend to windowsills and under mattresses, or other places that were not conducive to a person hiding from the police. 56 F.3d at 307. The touchstone obviously was the ability for a potential attacker to hide. Indeed, even in United States v. Ford, the court held that the police could perform a protective sweep of the bedroom that adjoined the hallway where the defendant had been arrested. 56 F.3d at 306. Thus, in order to ensure their safety, the police may conduct a protective sweep of any adjoining area that might be used to launch an attack. Here, the closet in the bedroom searched by Officer Perkins was located right above the place where Ms. Cain was arrested and it was reasonable for Officer Perkins to look in the closet to ascertain if someone was hiding there waiting to attack.

17. Once Officer Perkins looked in the closet and saw the contraband in plain view during a cursory visual inspection, it was lawful for him to seize it. In re Sealed Case, 153 F.2d 759, 769-770 (D.C. Cir. 1998). The police may seize contraband in plain vew. California v. Horton, 110 S.Ct. 2301 (1990). Therefore, because Officer Perkins lawfully looked into the closet and saw the contraband that was in plain sight, the Motion to Suppress should be denied.

18. Finally, at this point, Officer Gilmore obtained a search warrant for the house. Once the search warrant was obtained, of course, the police were free to search the entire house. Thus, the recovery of the additional 150 grams of cocaine base was lawful. See generally United States v. Leon, 468 U.S. 897, 922 (1984). Therefore, the motion to suppress should be denied.

The Motion to Suppress Should Be
Denied Because Defendant Was Not In
Custody At The Time Of His Statement And He
Voluntarily Waived His Right To Remain Silent

19. The Court should also reject the defendant's argument that his statements should be suppressed. First, at the time the defendant gave the statement, he was not in custody. Second, even if he had been in custody, the defendant was advised of his rights and voluntarily waived those rights in writing. The motion completely fails to articulate any basis for believing that the defendant's waiver of his rights was somehow coerced. It was the defendant, who was completely free, who stopped the police as they were leaving and indicated that he wished to make a statement. There is simply nothing to suggest that the defendant's waiver is not valid. Therefore, the Motion to Suppress the statement should be denied.

A. Custody

20. The Court should deny the Motion to Suppress because the defendant was not in custody at the time he made his statement to Agent Barmonde. It is well-established that the protections afforded by the Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966) do not apply unless the suspect was in custody. See e.g. United States v. Gale, 952 F.2d 1412 (D.C. Cir. 1992). Custody occurs only when the suspect has been subjected to "restraints comparable to those associated with a formal arrest." Berkermer v. McCarty, 468 U.S. 420, 435-442 (1984). See also Thompson v. Keohane, 516 U.S. 99, 102 (1995). Assuming, arguendo, that the defendant was in custody while in handcuffs waiting for the warrant to be executed and he had invoked his rights,[3] the record makes

---

[3] It is unclear whether the defendant was in custody during this period of time because, although he was in handcuffs, the police advised him that he was not under arrest and he was being secured only to maintain safety. E.g., Johnson v. United States, 616 A.2d 1216 (D.C. 1992)(defendant not in custody even though taken to police station and interrogated for several

clear that the defendant was not in custody at the time he approached the police and then he gave his statement to Agent Barmonde. It is important to note that the police do not violate Miranda where the suspect consents or reinitiates contact after being advised of his rights. See Edwards v. Arizona, 451 U.S. 477 (1981). But, more importantly, the defendant was completely and totally free at the time he gave his statement and, therefore, was not in police custody.

21. By the time the defendant approached Marshal Obrien and expressed his desire to make a statement, the handcuffs had been removed from the defendant and he was free to come and go as he wished. The police were actually in the process of leaving the scene. Agent Barmonde had already left. The police had decided – and taken every action consistent with that decision – not to arrest the defendant and simply leave him alone. By the time Agent Barmonde returned, the defendant was out of the handcuffs, on the sidewalk, walking around, talking with other citizens, and exercised his right not to go with the police when they offered to take him elsewhere to make the statement. Plainly, the defendant was not in custody. Moreover, it was the defendant who reinitiated contact with the police by approaching Marshal Obrien and expressing a desire to make a statement. Thus, the officers were not in violation of Miranda. Therefore, the Motion to Suppress should be denied.

B. Waiver

22. Even if the Court were to find that the defendant was in custody at the time he gave a statement to Agent Barmonde, the Motion to Suppress should still be denied because the defendant gave a voluntary and knowing waiver of his right to remain silent. The Supreme Court has held that statements made by an accused, while in police custody, are inadmissible unless the police, prior to

---

hours since defendant was told he was not under arrest and left unattended at various points).

questioning, warn him that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so chooses. Miranda v. Arizona, 384 U.S. 436, 479 (1966). The issue then is whether the defendant knowingly, intelligently and voluntarily waived these rights.

23. The United States bears the burden proving by a preponderance of the evidence that the defendant waived his rights and gave a statement to the police. In making this determination, the primary consideration for courts has been whether the statements resulted from police coercion. Thus, "[t]he voluntariness of a waiver of this privilege has always depended on the absence of police overreaching." Colorado v. Connelly, 479 U.S. 157, 170 (1986). In order to reduce the risk of a coerced statement, the accused must be apprised of his rights and the exercise of those rights respected. Missouri v. Seibert, 542 U.S. 600, 608-09 (2004). The admissibility of an accused's statements is generally conditioned on warning the accused of his rights. Id. "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979). In deciding whether an accused has waived his rights, court will employ an objective standard for evaluating the waiver, and take into consideration the defendant's education, experience and the conduct of the accused. United States v. Yunis, 859 F.2d 953, 965 (D.C. Cir. 1988). Employing these principles to the instant case, it is clear that the defendant gave a valid waiver of his rights after twice being properly advised by Agent Barmonde.

24. At the time of his waiver, the defendant was thirty-seven years old. In addition, the

defendant had prior convictions. In short, the defendant was well into his adult years and was sophisticated about the criminal justice system. The defendant was sober and under no coercion from the police. The defendant was not in handcuffs, not surrounded by police, the officers did not have their weapons drawn, and he was free to move in any direction. The defendant was able to talk with citizens who had arrived on the scene. The statement was made in a location on the street that was of the defendant's choosing.

25. Moreover, as reflected in Exhibit 1, the defendant was given warnings by Agent Barmonde.

26. The defendant then went on to waive those rights by acknowledging that he had been advised of his rights. See Exhibit 1.

27. The Motion to Suppress and record here gives absolutely no indication of coercion by the police. Indeed, the record demonstrates that the defendant, an adult familiar with the criminal justice system, was fully advised of his rights and agreed to waive those rights and answer Agent Barmonde's questions. Therefore, the Motion to Suppress should be denied in its entirety.

## **CONCLUSION**

Therefore, upon the foregoing facts and the authorities cited, the Court should deny the Motion to Suppress in its entirety.

Respectfully,

KENNETH L. WAINSTEIN
United States Attorney

By: _____
MICHAEL T. TRUSCOTT
ASSISTANT UNITED STATES ATTORNEY
Member of the New York Bar
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
Phone: (202) 514-7533
Fax: (202) 514-6010

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true and correct copy of the foregoing United States' Opposition to Defendant's Motion to Suppress was caused to be served via United States Mail, postage prepaid, upon counsel of record for the defendants, this 4th day of August, 2006, upon:

David Bos
Assistant Federal Public Defender
625 Indian Avenue, N.W., Suite 550
Washington, D.C. 20004


MICHAEL T. TRUSCOTT