

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 06-109 (RWR) |
| : | |
| TYRONE LOFTEN, : | |
| : | |
| Defendant. : | |

FILED

FEB 2 - 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## GOVERNMENT'S SUBMISSION TO THE COURT
## IN PREPARATION FOR THE UPCOMING PLEA HEARING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, and Defendant, Tyrone Loften, hereby submit the following in preparation for a plea hearing in the instant case.

I.   ELEMENTS OF THE OFFENSES

The essential elements of the offense of Conspiracy to Possess Cocaine Base With the Intent to Distribute are:

1. An agreement existed between the defendant and others to commit the crime of possession with the intent to distribute cocaine base:

The elements of the offense of possession with the intent to distribute cocaine base are:

A) The defendant possessed cocaine base;

B) That the defendant did so knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

C) That when the defendant possessed the cocaine base, he had the specific intent to distribute it. "Distribute" means to transfer or attempt to transfer to another person.

2. The defendant intentionally joined in the agreement. It is not necessary to find that he agreed to all of the details of the crime, or that he knew the identity of all of the other people the governments claims were participating in the agreement.

3. One of the people involved in the conspiracy did something to carry out the conspiracy.

II.  COPY OF THE PLEA AGREEMENT

A copy of the plea agreement, not yet executed by the defendant, is attached.

III.  PENALTIES

For Conspiracy to Distribute Cocaine Base, pursuant to 18 U.S.C. §371:

1. a term in prison of not more than 5 years;

2. a fine of not more than $250,000;

3. a term of supervised release of not more than three years; and

4. a special assessment of $100

IV.  STATEMENT OF OFFENSE

On April 7, 2005, members of the Capital Area Regional Fugitive Task Force[1] went to 229 54th Street, N.E., Washington, D.C, to execute an arrest warrant for Monica Cain. When the marshals knocked, Ms. Cain answered the door. Ms. Cain let the officers in and they explained why they were there. Although not completely undressed, Ms. Cain needed additional clothing in order

---

[1] The task force was a multi-agency efforts to apprehended wanted on outstanding warrants.

to go outside. As the marshals began to put Ms. Cain in handcuffs, she indicated that her boyfriend Tyrone was upstairs. The dwelling was a detached townhouse. The stairs leading to the second level were immediately to the right of the location of the spot where the marshal arrested Ms. Cain. At the top of the stairs was a bedroom on the right side.

Someone called and "Tyrone" – who was later identified as Tyrone Loften – came down the stairs. The identity of the defendant was unknown to the police at this point.

The defendant was seen coming out of the bedroom located at the top of the stairs. The police later recovered in a safe approximately 60 grams of cocaine base, 200 grams of marijuana, a scale, United States Currency, razor blades, rubber gloves, and a Taurus 9mm handgun and magazine. The cocaine base was packaged in 44 ziplocks, located in a clear baggie. There were also five baggies of cocaine base. The marijuana was packaged in 154 ziplocks, located in a plastic bag.

In addition to possessing the cocaine base itself, the manner in which the defendant packaged the cocaine base, through the use of a scale, razor blades, rubber gloves, and individual ziplocks constitute one of the overt acts in furtherance of the conspiracy.

The police then obtained a search warrant for the house. In the course of executing the search warrant, the police recovered more cocaine base that weighed approximately 150 grams. This cocaine base had not yet been broken down and placed into ziplocks. As the police obtained the search warrant and continued their investigation, Ms. Cain was secured and kept downstairs. The defendant was secured in handcuffs and kept upstairs.

The defendant subsequently gave a statement to the police wherein he admitted that the narcotics, as well as other contraband, found in the house belonged to him.

The United States would have also offered the testimony of an expert in narcotics trafficking

who would have opined that the cocaine base was smokeable. Further, the expert would have opined that narcotics traffickers will use razor blades to break down the cocaine into portions that can be later sold; that the scale is used to weigh the individual portions of cocaine base (which in turn governs the price to be charged); and that traffickers will use ruber gloves to handle the narcotics. The expert would have also opined that narcotics traffickers will use items such as safes and firearms to maintain security over their narcotics and money. The expert would have opined that the manner in which the cocaine base was packaged, the amount of cocaine base, as well as the fact that there was nothing recovered from the house demonstrating that the defendant was the individual who "cooked" the cocaine for sale as "crack" are consistent with or indicia that there were other individuals who provided the cocaine base to the defendant and/or that the defendant was working with others who would actually sell the narcotics on the street.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

MICHAEL T. TRUSCOTT
Assistant United States Attorney
Member of the New York Bar
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
202-514-7533

## DEFENDANT'S ACKNOWLEDGMENT

I have read this Statement of Offense and have discussed it with my attorney, Bernard S. Grimm, Esq. I fully understand this Statement of Offense. I agree and acknowledge by my signature that this proffer of facts is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

Date: 2/2/07

Tyrone Loften
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this factual proffer as true and accurate.

Date: 2/2/07

Bernard S. Grimm
Attorney for Defendant