UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Criminal No 06-CR-109(RWR) |
| TYRONE LOFTEN | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

For the reasons set forth below counsel would ask the Court to follow the proposed agreement set forth in paragraph 10 of the plea agreement which represents the considered judgment and position of both parties after considerable negotiations. Mr. Loften pled guilty to a violation of 18 U.S.C. § 371. Specifically § 371 of the United States Code carries a statutory maximum of 5 years. Mr. Loften is also currently serving a sentence of 60 months which he received from the Honorable Judge Leibovitz on October 28, 2005. Counsel is asking the Court, pursuant to paragraph 10, to sentence Mr. Loften to a guideline sentence consistent with counsel's interpretation of Mr. Loften's base offense level described below and run no less than 24 months of that sentence concurrently with the sentence in 2004 FEL 7799.

**Crack Cocaine Powdered Cocaine Disparity**

Mr. Loften pled guilty to Conspiracy to Possess with intent to Distribute over 50 grams of cocaine base. According to the pre-sentence writer Mr. Loften is accountable for 190 grams of cocaine base, (paragraph 3, page 3). According to the United States Sentencing Guidelines that places Mr. Loften at a base offense level 34. A two level increase for a gun enhancement was added under 2D1.1 (b)(1) resulting in adjusted offense level of 36 minus three levels for acceptance of responsibility results in a total offense level of 33, his prior convictions qualify him for career offender status under 4(b) (1).1 which is Criminal History Category VI resulting

in a guideline range of 233 months to 293 months. Counsel submits that this base offense calculation is in error. Mr. Loften's base offense level for the cocaine he possessed is based on the inflated calculation and grossly disparate guideline score that is assigned to cocaine base. Counsel submits Mr. Loften should be assigned a base offense level based on 190 grams of cocaine hydrochloride, not cocaine base. The Court of Appeals recently spoke to this specific issue in <u>United States v. Pickett</u>, ____ F.3d _____ (D.C. Circuit February 13, 2006).

In <u>Pickett</u>, the D.C. Circuit held that "a district court, in sentencing a defendant, may properly take into account the fact that the 100-to-1 ratio embedded in the Sentencing Guidelines for crack-to-powdered cocaine offenses bears no meaningful relationship to a defendant's culpability." <u>United States v. Pickett</u>, __ F.3d __, __ (D.C. Circuit February 13, 2006) (J.Rodgers concurring). The court found that it was "beyond doubt that the district court erred in refusing to evaluate whether sentencing <u>Pickett</u> in accordance with Guideline § 2D1.1, and its 100-to-1-ratio, would effectuate the purposes of sentencing set forth in § 3553(a)." <u>Pickett</u>, __ F.3d at __, slip op. at 14. In doing so, the court relied on the United States Sentencing Commission's own assessment that the cocaine guidelines do not effectuate the purposes of sentencing.

The court noted, "[w]hen it comes to the application of Guideline § 2D1.1 in crack cocaine cases, the Commission is one of its severest critics." <u>Id</u>. at 12. In 2002, the Commission "bluntly" stated that it "'firmly and unanimously believes that the current federal cocaine sentencing policy is unjustified and fails to meet the sentencing objectives' in § 3553(a)." <u>Pickett</u>, __ F.3d at __, slip op. at 12-13.

The crack cocaine guidelines are unjustified and do not meet the objectives of § 3553 for numerous reasons, including: (1) the guidelines lead "to anomalous results in which retail crack

dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced;" (2) the 100-to-1 ratio "greatly overstates the relative harmfulness of crack cocaine;" (3) crack cocaine dealers who are responsible for relatively small quantities "receive especially disparate penalties in comparison to similar powder cocaine offenders;" (4) "all crack cocaine offenders [are treated] as if they committed [harmful conduct such as violence], even though most crack cocaine offenders in fact had not;" (5) "use of the 100-to-1 ratio and its quantity-based approach threatens public confidence in the federal courts because it has had a disproportionate impact on African-American offenders;" and (6) although "meant to promote uniformity in sentencing, not to increase the length of sentences," the crack guidelines increased sentences "far above" the sentences typically imposed prior to the Guidelines.  Pickett, __ F.3d at __, slip op. at 13 (internal quotation marks and citations omitted).  The D.C. Circuit found:  "In terms of the sentencing factors of § 3553(a), the Commission thus believes that its Guideline for crack distributors generates sentences that are 'greater than necessary,' exaggerates 'the seriousness of the offense' of crack trafficking, does not 'promote respect for the law,' and does not 'provide just punishment for the offense.'"  Id. at 14 (quoting 18 U.S.C. § 3553(a), (a)(2)(A)).

The Commission's assessment that the crack guidelines do not meet the purposes of sentencing applies to all defendants.  Pickett, __ F.3d at __, slip op. at 14.  The assessment is particularly striking as to Mr. Loften who is not the "serious or high-level trafficker" that should receive a high sentence such as that suggested by the Guidelines.  Mr. Lofton is 38 years old and his record of convictions represents someone who is at the bottom of the drug dealing food chain.  Application of the crack guidelines here would create the very problems that concerned the Commission and the D.C. Circuit in Pickett — such a sentence would punish a minimally

3

culpable individual who was not involved in any violence as if he were a high-level drug trafficker. Here, an extended sentence of incarceration would be greater than necessary, exaggerate the seriousness of the offense, not promote respect for the law, and not provide just punishment.

The Sentencing Commission has stated that sentences for crack offenders more equivalent to those for powder offenses would "dramatically improve the fairness of the federal sentencing system." This Court can accomplish this by imposing a sentence within the range established for an equivalent amount of powder cocaine, which in this case would be 190 grams resulting in a cocaine hydrochloride base offense level of 18 increased by two for the gun enhancement, decreased by three for acceptance of reasonability results in adjusted base offense level of 17 with a criminal history category of VI which results in a guideline of 55 to 63 months.

The other factors set forth in § 3553 similarly support a sentence significantly below the range suggested by the crack cocaine Guidelines.

When considering the history and characteristics of Mr. Loften, the Court should consider that Mr. Loften is 38 years old. He began drinking and smoking when he was 13 years old. He continued to use marijuana experimented with most drugs other than heroin up to recently.

A cocaine powder sentence would comply the purposes of sentencing set forth in § 3553, reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care.

**Conclusion**

     For the foregoing reasons and such other reasons as may be presented at the sentencing hearing in this matter, Mr. Loften respectfully requests that the Court impose a sentence based on a cocaine hydrochloride calculation not cocaine base.

                              Respectfully submitted,

                              _____/s/_____
                              BERNARD S. GRIMM